```
                                                                          1
 1                      UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF VIRGINIA
 2                           ALEXANDRIA DIVISION

 3   ---------------------------x
     UNITED STATES OF AMERICA,   :    Civil Action No.:
 4                               :    1:20-cv-667
                  Plaintiff,     :
 5       versus                  :    Friday, September 9, 2022
                                 :
 6   8.929 ACRES OF LAND IN      :
     ARLINGTON COUNTY, VIRGINIA, :
 7   et al.,                     :
                                 :
 8                Defendants.    :
     ---------------------------x
 9
             The above-entitled status conference was heard
10   before the Honorable Leonie M. Brinkema, United States
     District Judge.  This proceeding commenced at 10:02 a.m.
11
                         A P P E A R A N C E S:
12
     FOR THE PLAINTIFF:      KRISTIN STARR, ESQUIRE
13                           OFFICE OF THE UNITED STATES ATTORNEY
                             2100 Jamieson Avenue
14                           Alexandria, Virginia  22314
                             (703) 299-3700
15
                             SETH MOHNEY, ESQUIRE
16                           EMMA HOLLOWELL, ESQUIRE
                             UNITED STATES DEPARTMENT OF JUSTICE
17                           Environmental & Natural
                             Resources Division
18                           P.O. Box 7611
                             Washington, D.C.  20044
19                           (202) 305-0285

20   FOR THE DEFENDANT:      JAMES AUSLANDER, ESQUIRE
     (Arlington County)      BEVERIDGE & DIAMOND
21                           1900 N Street, NW
                             Suite 100
22                           Washington, D.C.  20036
                             (202) 789-6000
23

24

25
```

```
 1                    A P P E A R A N C E S (cont.)

 2   FOR THE DEFENDANT:      MINHCHAU CORR, ESQUIRE
     (Arlington County)      OFFICE OF THE ARLINGTON
 3                           COUNTY ATTORNEY
                             2100 Clarendon Boulevard
 4                           Suite 403
                             Arlington, Virginia  22201
 5                           (703) 228-7106

 6   COURT REPORTER:         STEPHANIE M. AUSTIN, RPR, CRR
                             Official Court Reporter
 7                           United States District Court
                             401 Courthouse Square
 8                           Alexandria, Virginia  22314
                             (571) 298-1649
 9                           S.AustinReporting@gmail.com

10          COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2           THE DEPUTY CLERK:  Civil Action 20-667, United
 3   States of America versus 83929 [sic] Acres of Land in
 4   Arlington County, Virginia, et al.
 5           Would counsel please note their appearances for
 6   the record.
 7           MS. STARR:  Good morning, Your Honor.
 8   Kristin Starr from the U.S. Attorney's Office.  And I'll let
 9   my co-counsel from the Department of Justice introduce
10   themselves.
11           THE COURT:  Good morning.
12           MR. MOHNEY:  Good morning, Your Honor.  Seth
13   Mohney from the Department of Justice.  And I'm here with my
14   colleague, Emma Hollowell, also from the Department of
15   Justice.
16           THE COURT:  Good morning.  And for the County.
17           MR. AUSLANDER:  Good morning, Your Honor.
18   James Auslander, Beveridge & Diamond, outside counsel for
19   Arlington County.
20           MS. CORR:  Good morning, Your Honor.
21   MinhChau Corr, Arlington County attorney.
22           THE COURT:  All right.  As you know, this case is
23   before the Court on a remand from the Fourth Circuit.  And I
24   hope that in the time since it came back you all have
25   talked.  This, today, is just a status hearing, so I want to
```

Stephanie Austin, RPR, CRR USDC/EDVA (571) 298-1649

1   know what the status of the case is.
2           I'll let -- have the County go first.  And,
3   Counsel, you're welcome to keep the mask on, but if you're
4   comfortable, I'd rather you'd have it off.  And be at the
5   lectern, please, when you're speaking.
6           MR. AUSLANDER:  Yes, Your Honor.  Thank you, Your
7   Honor, for your order and for seeing us today.
8           Your Honor is correct, we're back following the
9   Fourth Circuit.  The parties have met and conferred, though
10  I don't believe that we're in agreement on how to proceed.
11  I'll let the United States speak, but their -- when we met
12  and conferred, the United States' proposal was to file --
13  basically refile their summary judgment motion under a new
14  heading as a Rule 71.1 motion.
15          The County strongly disagrees with that course of
16  action and believes there's triable issues of material fact
17  that warrant proceeding in the normal course with a pretrial
18  schedule.  I believe we previously -- Your Honor had a
19  tentative trial date that was, of course, superseded by
20  the -- by this Court's prior ruling and the Fourth Circuit
21  appeal.  And so I believe that we're in disagreement on how
22  to proceed.  But I do believe both parties believe discovery
23  is completed, so that is not an issue, just a question about
24  what the next -- what the next steps are.  And we have a
25  counterproposal, but the United States wanted to proceed

1   with their --
2           THE COURT: But I'm assuming when you -- I mean,
3   in terms of the County's position on a trial, as you know,
4   these proceedings are somewhat bifurcated. I mean, there's
5   a fair number of preliminary issues, some of which can be
6   dispositive, that are simply for the Court. And then the
7   only issue that I believe goes to a jury would be the actual
8   valuation if the Court determines that a monetary
9   compensation is the appropriate approach.
10          So when you talk about a trial, you're talking, I
11  assume, about, at least at the -- at these stages, a bench
12  trial.
13          MR. AUSLANDER: Your Honor, I believe it's that
14  there are -- the County has demanded a jury trial. It
15  previously believed that the ultimate issue in this case is
16  the valuation of the Southgate parcel, though the County
17  does recognize this Court's authority to determine issues of
18  fact other than the -- the preceding issues of fact within
19  the application of the substitute facilities doctrine, the
20  relationship of the parcel. So the County is willing to
21  discuss a bifurcation. But during our meet-and-confer, the
22  United States wanted to only discuss their Rule 71.1 --
23  basically refiling their motion.
24          THE COURT: All right.
25          MR. AUSLANDER: So we're not committed to

1  everything being in a jury trial, but we believe that it
2  should proceed on a more normal case for a condemnation case
3  than the abbreviated course that we took and was remanded by
4  the Fourth Circuit.
5           THE COURT:  All right.  That's fine.  Let me hear
6  from the Government.
7           MR. AUSLANDER:  Thank you, Your Honor.
8           MR. MOHNEY:  Good morning, Your Honor.
9           THE COURT:  Good morning.
10          MR. MOHNEY:  As you mentioned, we believe there
11 are preliminary issues in this case that will be
12 dispositive.
13          As counsel said, we think the proper course of
14 action, in light of the Fourth Circuit's opinion, is to
15 refile our prior summary judgment motion, but captioned as a
16 Rule 71.1 motion.
17          We think the Fourth Circuit's opinion is quite
18 clear that Your Honor can decide issues that dispose of this
19 case under Rule 71.1.  And without getting into too many
20 details, the Fourth Circuit seemed to think that the --
21 whether the taking constituted a unified taking was the,
22 what it described, the factual cornerstone of this case.
23          THE COURT:  Well, I think you all agreed with
24 that, too, the last time you were before the Court.  I mean,
25 that is the core issue.

```
 1              MR. MOHNEY:  That's correct, Your Honor, and
 2   that's an issue that Your Honor can decide under Rule 71.1,
 3   and that's why we would like to refile our summary judgment
 4   motion under Rule 71.1.
 5              THE COURT:  But the Court would also have the
 6   option before resolving even a Rule 71 proceeding to take
 7   evidence.
 8              MR. MOHNEY:  Yes, Your Honor.  We understand that,
 9   you know, the Court has discretion to do that.  But, you
10   know, as the concurring opinion said, the County did not
11   raise on appeal that there was any issue with the, you know,
12   extent of factual development before Your Honor.  And we
13   think that the summary judgment briefing, as well as
14   anything -- papers submitted on a revised 71.1 motion, would
15   be more than sufficient for Your Honor to decide the motion
16   on the papers and maybe with an argument.  But at least the
17   United States is not aware of any evidence that would need
18   to be presented in front of Your Honor.
19              THE COURT:  You know, I reread the opinion last
20   night just to make sure, and it's interesting.  I mean, the
21   concurring opinion from Judge Rushing would suggest that I
22   simply reissue the decision and just say it's under Rule 71
23   rather than a summary judgment ruling, and that would be it.
24              But I've read the majority opinion a little more
25   closely than that.  I mean, they, multiple times -- I
```

7

1  recognize they were using the summary judgment standard of,
2  you know, a reasonable juror or a reasonable fact-finder
3  could make this finding or that finding.
4          In my view, that was a hint, a strong hint, that
5  the record -- a pure paper record may not be sufficient in
6  this case.  So I think the concept of perhaps having to have
7  some sort of a bench trial where we can hear the testimony
8  of some of the core witnesses may be necessary.
9          Has anything changed since this case -- because
10 this case was filed almost two years ago -- with the further
11 development, for example, of the Amazon project, which, of
12 course, is something that has played into this case; that
13 is, whether that particular parcel of land has taken on, you
14 know, new value in light of the increase in demand for
15 housing, especially near that project.  And, of course, that
16 south -- that area that we're talking about, those 3 or
17 4 acres, are very close to where Amazon headquarters are
18 going to be.  And so as I was reading the opinion and
19 thinking more about it, that's one thing that runs through
20 my mind.
21         The other thing that, of course, runs through my
22 mind is that the County has argued that, you know,
23 rezoning -- because it would have to be rezoned to be used
24 as they want to use it or claim they want to use it.
25         My understanding is that the zoning process can

8

1  sometimes take quite a lot of time, and it's not uncommon,
2  as I understand it, for the public to get involved.  If
3  citizens in the neighborhood, for example, didn't want more
4  residential housing in that area, there could be an -- and I
5  know that there's been people protesting about, you know,
6  just the Amazon project.  So I'm not sure that rezoning is
7  necessarily as easy as it feels on paper.  So there are a
8  lot of issues that need to be thought about.
9          But in the meantime, as just a practical thing,
10 what is happening with the expansion of Arlington Cemetery?
11 Is this litigation holding that up, or is the Government
12 going ahead and doing it and it's just a matter of how you
13 ultimately compensate the County?  What's the status?
14          MR. MOHNEY:  Your Honor, I don't know the exact
15 status of the project right now, but my understanding is
16 that because the United States did acquire the land once the
17 condemnation proceeding was filed, that the project is going
18 forward.  I don't know the specific status right now, and
19 I'm not sure -- I'll let the County speak to the status of
20 the Amazon headquarters that you referred to.
21          THE COURT:  All right.  Let me hear from the
22 County.
23          MR. AUSLANDER:  Thank you, Your Honor.  The County
24 agrees --
25          THE COURT:  Take it off.

9

1          MR. AUSLANDER:  I'm sorry.  One of these days I
2   will remember.
3          The County concurs with Your Honor's inclination
4   and believes we're going to proceed, whatever the motion is,
5   that it should -- there should be a bench trial or an
6   evidentiary hearing or something at a minimum.
7          To Your Honor's particular questions, the County
8   agrees the project is going forward.  The United States owns
9   the county.  I don't live very far from the project itself.
10  There's dirt being moved everywhere, and I believe it is
11  currently on schedule.
12         As for the Amazon project, I don't know the
13  specifics of that, but I believe that all approvals for work
14  have been secured and the various buildings are in the
15  process of being constructed.  I don't know -- I believe
16  it's a multi-phase project, but I don't know specifically
17  where it is in the current calculus.
18         What's salient, Your Honor, is that Amazon still
19  is building its HQ2 headquarters and bringing in employees,
20  goods and services, movement, and so that leads -- does
21  increase the housing demand, which we've covered previously.
22         THE COURT:  And the Potomac Yard Metro is close to
23  being opened as well; correct?
24         MR. AUSLANDER:  Correct.  And that is not a county
25  project --

                                                          10

```
1                THE COURT:  I understand that.
2                MR. AUSLANDER:  -- that's a WMATA project.  But,
3    yes, between Arlington County and the City of Alexandria,
4    yes, that project is also --
5                THE COURT:  And that also, I suspect, increases,
6    to some degree, the value of that area because it makes it
7    closer to the Metro.
8                MR. AUSLANDER:  Yes, Your Honor.  It is I
9    believe -- it's a little more than a mile, I believe, from
10   the project site.  There are two stops currently that are
11   already within a mile between Pentagon and Pentagon City,
12   and this one would be a little bit further away, but another
13   linkage, yes.
14               THE COURT:  Has there been any -- I'm just
15   curious.  Has the County received any complaints or concerns
16   from the local neighborhood?  Because I know that was also
17   an issue about, you know, traffic increase or decrease based
18   upon this project.
19               MR. AUSLANDER:  Your Honor, I would have to
20   consult with -- I don't believe there have been any new or
21   major complaints against the County.  There are obviously a
22   lot of concerns with development, generally, and HQ2 is one
23   of them.  But there have not been, I believe, specific
24   complaints regarding the Arlington National Cemetery
25   expansion or concerns about development in this project
```

11

1  area.

2  There have been support and opposition, I believe,
3  as with any major development, to the overall plans, but I
4  believe that the themes have been consistent since last we
5  were before Your Honor.

6  THE COURT: And the renovation of Columbia Pike,
7  has that -- I haven't been on Columbia Pike recently. Has
8  that started yet?

9  MR. AUSLANDER: Well, Your Honor, there has been
10 ongoing redevelopment of Columbia Pike, particularly west of
11 the project. As part of this project, I believe Columbia
12 Pike remains open. I would have to defer to the United
13 States on the status of that project. But I believe that
14 the new South Nash Street has not been constructed, and the
15 remaining -- the current Columbia Pike, I believe, remains
16 open, but that's just my personal understanding, Your Honor.

17 THE COURT: All right. Let me hear from the
18 Government, if you know.

19 MR. MOHNEY: Thank you, Your Honor.

20 With respect to the status of construction, I
21 spoke with my co-counsel, and construction has begun on the
22 project. With respect to whether construction has begun
23 specifically on the Southgate parcel, I'm not sure of the
24 status of that. My understanding is Columbia Pike does
25 remain open.

12

```
1              And one point I just wanted to raise.  And we were
2    discussing some of the developments in or around that area.
3    For purposes of this case, the determination of just
4    compensation is done at the time of the taking.  So the
5    United States' position is that, you know, subsequent
6    developments such as, you know, where the status of the
7    Amazon headquarters is or, you know, and different
8    attractions in and around that area are not relevant to a
9    determination of just compensation.
10             THE COURT:  And the date that you say is the date
11   we would be looking at is when?
12             MR. MOHNEY:  It was the date that the deposit was
13   accepted by the Court.  I do not have the docket right in
14   front of me.
15             THE COURT:  The $10 deposit?
16             MR. MOHNEY:  Yes.  Yeah.
17             THE COURT:  Okay.  All right.  That's fine.
18             All right.  Well, I think, again -- my view on
19   this one is obviously nobody wants this coming back, and so
20   I think the best record to establish, having looked very
21   carefully at the Fourth Circuit ruling, is we need to have
22   an evidentiary hearing.  All right.  I will let the parties,
23   you know, focus on where they feel that is most necessary.
24   Clearly, I would expect we're going to need to hear from the
25   experts, talking about exactly whether this is a unified
```

13

```
 1   project or whether it can, in fact, be bifurcated.
 2              Again, I mean, I am not at all averse to reversing
 3   myself if I'm satisfied that that was not a correct ruling.
 4   Again, my initial ruling was -- and I still think it was
 5   sound -- was that, in fact, this is one unified project, but
 6   I have an open mind to being dissuaded from that.  And I
 7   will be interested in hearing live testimony, because I find
 8   that just reading cold paper is never quite the same.
 9              So in terms of getting ready -- again, I think I
10   should give both sides the opportunity for supplemental
11   briefing.  So I should think the best thing is, since I
12   always encourage parties to work together -- and I assume
13   that there is no sense in trying to get you to talk to a
14   mediator because it doesn't sound as though anyone can
15   settle this case?  I mean, is it pretty much the case that
16   there does not appear to be any potential for settlement?
17              MR. AUSLANDER:  Your Honor, the parties -- I'm
18   sorry.
19              Your Honor, the parties engaged in a Fourth
20   Circuit mediation process --
21              THE COURT:  You did.
22              MR. AUSLANDER:  -- before proceeding to briefing
23   and decision.  I believe the parties, during their
24   meet-and-confer, both indicated willingness to entertain
25   reasonable offers, and so I believe there's still a
```

14

1  settlement avenue.  But as of this time, there is not an
2  agreement in principle on a settlement.
3          I'll let the United States weigh in if they
4  disagree with what I just said.
5          THE COURT:  Did you make any progress, though,
6  with the Fourth Circuit mediator?  In other words,
7  sometimes, even though a case doesn't settle, both sides
8  have shifted somewhat in their positions so that there is,
9  you know -- that tells an experienced mediator that there is
10 still some flexibility.
11         What's the Government's position on that?
12         MR. MOHNEY:  Your Honor --
13         THE COURT:  Counsel, at the lectern, please.
14         MR. MOHNEY:  Yes.  Thanks.
15         THE COURT:  Were you involved in the -- in any of
16 those settlement efforts?
17         MR. MOHNEY:  Your Honor, I was not.  We spoke with
18 the County, you know, prior to this hearing and wanted to,
19 you know, appear before Your Honor and see how this hearing
20 went.  The United States is open to considering settlement
21 offers in good faith.  We would obviously have to speak with
22 our client and our supervisors.
23         But, at this point, Your Honor, you know, we
24 thought that the Fourth Circuit laid out a clear path to
25 addressing the issue of whether the taking was a unified

15

1   parcel or a divisible parcel.  And if that decision -- if
2   Your Honor, again, concludes that it's a unified parcel,
3   that would resolve the case in favor of the United States.
4   So that was our preference, to proceed down that track.
5           THE COURT:  But, again, the County could still
6   appeal that decision; right?
7           MR. MOHNEY:  Yes, Your Honor.
8           THE COURT:  Obviously, that's further delay.  I
9   think both sides would have a real interest in having this
10  dispute resolved one way or the other.  I mean, a final
11  resolution either by settlement or by a judgment doesn't
12  have to be appealed.
13          So I think it's always wise that if there is
14  definitely some interest and ability to move -- I mean,
15  obviously, if the position is, take it or leave it, that's
16  not going to get a case to settle.  But good lawyers and
17  wise parties should always have an open mind to trying to
18  resolve civil disputes.  I think you should think about
19  that.
20          Judge Buchanan has just -- is about to retire, but
21  she's on re-call, and she has done some very, very complex
22  cases involving municipality issues in the past.  If both
23  sides were serious about trying to work this out, I could
24  see whether she would be willing, as part of her re-call
25  duties, to sit down with you all and try to, you know, see

16

1  if we can work it out.  But both sides have to be willing,
2  and so willingness means you're prepared to make a shift in
3  position, you know.
4           So I recommend that you both think about that, and
5  if both sides are in agreement to try, yet again, to settle
6  before you spend the time and money, you know, rebriefing
7  and preparing witnesses, that's fine with me.  But, in any
8  case, I'm going to leave it to you all to see if you can
9  work out, you know, as appropriate schedule for briefing.
10          In terms of a hearing date, let me give you some
11 days right now on my calendar this year that are open.  I
12 think probably we would be looking at early November.  But
13 right now I would have time on Monday, November 7.
14 Actually, that entire week I would be able to hold a
15 hearing, as I would the week of November 14.  So those are
16 two wide open weeks that we could do it in November.  And
17 the week after Thanksgiving is also open.  So that would be
18 the week starting November 28.  All right.
19          MR. AUSLANDER:  Your Honor, what was that last
20 date?  I'm sorry.
21          THE COURT:  November 28.  That week is also right
22 now wide open on my calendar.  All right.
23          So you should meet and confer.  We can at least
24 lock in a trial date right now even if you then decide to go
25 and try to settle.  That would at least allow me to have it

17

```
 1  calendared and you all to see about your witnesses.  So let
 2  me ask that by next Friday you all present me with a
 3  proposed briefing schedule, indicate whether you are going
 4  to try mediation first, and a date in that time frame that
 5  I've given you; all right?
 6          MR. AUSLANDER:  Yes, Your Honor.
 7          THE COURT:  Anything further?
 8          MR. MOHNEY:  Yes, Your Honor.  Thank you.
 9          THE COURT:  Thank you.  You're free to go.
10             (Proceedings adjourned at 10:22 a.m.)
11          ----------------------------------
12  I certify that the foregoing is a true and accurate
13  transcription of my stenographic notes.
14                          _____
15                          Stephanie M. Austin, RPR, CRR
```

*Stephanie Austin* (signature)

18