IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| 8.929 ACRES OF LAND, MORE OR | ) | Civil No. 1:20-cv-00667 |
| LESS, SITUATED IN ARLINGTON | ) | |
| COUNTY, VIRGINIA; | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ARLINGTON COUNTY, VIRGINIA, *et al.* | ) | |
| | ) | |
| *Defendants*. | ) | |

**DEFENDANT ARLINGTON COUNTY'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW AND WITNESS LIST FOR EVIDENTIARY HEARING**

# TABLE OF CONTENTS

I.      Introduction and Legal Framework ..................................................................1

II.     Witnesses Arlington County Intends to Call at the Hearing.................................6

III.    Arlington County's Proposed Findings of Fact ..................................................6

        A.      The Southgate Parcel Is the Distinct and Relevant Property for
                Analysis............................................................................................6

        B.      Arlington County Faces a Housing Deficit with Inherent
                Constraints to Address It......................................................................8

        C.      The Southgate Parcel Is Ideally Situated for Residential
                Development.....................................................................................10

        D.      The Parcel's Highest and Best Use Is Residential Development,
                Not Just a Road. ...............................................................................11

        E.      The Parties' Course of Dealing Mutually Recognized the
                Southgate Parcel's Unique and Singular Value. ...................................16

        F.      The County Has Not Received Just Compensation for the
                Southgate Parcel...............................................................................20

IV.     Arlington County's Proposed Conclusions of Law ...........................................23

        A.      The County's Fee Simple Ownership of the Southgate Parcel Was
                Unrestricted......................................................................................23

        B.      Substitute Facilities Are Irrelevant to the Southgate Parcel's Just
                Compensation. ..................................................................................26

        C.      The United States Lacks Authority to Unilaterally Dispense with
                the Fair Market Value of the Southgate Parcel......................................27

        D.      The Project's Purported "Benefits" to the County Are Irrelevant to
                Just Compensation for the Parcel.........................................................29

V.      Conclusion .................................................................................................30

## TABLE OF AUTHORITIES

**Cases**

*Bd. of Cnty. Sup'rs v. United States*,
    276 F.3d 1359 (Fed. Cir. 2002) ............................................................................. 3

*California v. United States*,
    395 F.2d 261 (9th Cir. 1968) ......................................................................... 4, 27

*Kirby Forest Indus. v. United States*,
    467 U.S. 1 (1984) ........................................................................................... 26, 27

*McCandless v. United States*,
    298 U.S. 342 (1936) ............................................................................................ 3, 4

*Mulford v. Walnut Hill Farm Grp.*,
    282 Va. 98 (2011) ................................................................................................. 24

*Olson v. United States*,
    292 U.S. 246 (1934) ............................................................................................... 3

*United States v. 50 Acres of Land* ("*Duncanville*"),
    469 U.S. 24 (1984) ................................................................................................ 27

*United States v. 69.1 Acres of Land*,
    942 F.2d 290 (4th Cir.1991) ................................................................................ 30

*United States v. 10.56 Acres*,
    No. C07–1261RAJ, 2010 WL 415244 (W.D. Wa. Jan. 27, 2010) ................................. 27, 28

*United States v. 8.929 Acres of Land*,
    36 F.4th 240 (4th Cir. 2022) ......................................... 1, 2, 3, 15, 24, 25, 27, 29

*United States v. Va. Elec. & Power Co.*,
    365 U.S. 624 (1961) ............................................................................................. 30

**Statutory Authorities**

40 U.S.C. § 345c ......................................................................................................... 25

National Defense Authorization Act of 2017 ("NDAA"), Pub. L. No. 114-328, §
    2829A(a)(1)(A) ( ....................................................................................... 7, 29, 30

**Rules and Regulations**

23 C.F.R. § 660.511 ................................................................................................... 22

Fed. R. Civ. P. 71.1 ................................................................................................... 28

**Additional Authorities**

*Arlington County Board Meeting Agenda Item* ,
    https://arlington.granicus.com/MetaViewer.php?view_id=2&event_id=1844&meta_id
    =217182 (Mar. 18, 2023), Mar. 22, 2023, https://www.arlingtonva.us/About-
    Arlington/Newsroom/Articles/2023/County-Board-Adopts-Expanded-Housing-
    Options .................................................................................................................. 10

Arlington County, *Arlington Fast Facts*
  https://www.arlingtonva.us/Government/Projects/Data-Research/Fast-
  Facts#:~:text=Arlington%20is%20a%20world%2Dclass,less%20than%2026%20squar
  e%20miles (Last Visited Apr. 3, 2023)....................................................................................... 9

Arlington County Zoning Map,
  https://gis.arlingtonva.us/gallery/map.html?webmap=ac7ff3875bcb4ed4bd79e19014e1caa9 . .14

*Uniform Appraisal Standards for Federal Land Acquisitions* ("Yellow Book"),
  U.S. Dep't. of Justice (2016) . ................................................................................................... 29

# I.  INTRODUCTION AND LEGAL FRAMEWORK

The sole dispute in this case is the just compensation the United States owes to Arlington County (the "County") for taking the County's approximately 4.23-acre Tract 104-1 ("Southgate Parcel" or "Parcel").[1]  More specifically for this evidentiary hearing, as the Court defined, the sole question is if the Southgate Parcel may reasonably be considered as valuable, developable land different from County-owned roadways (portions of Columbia Pike and South Joyce Street, Tracts 104-2, 104-3, and 106) which the United States simultaneously took in this action.  The evidence and testimony should lead the Court to readily answer that question in the affirmative. Indeed, the Fourth Circuit has signaled that the County's evidence supports the Parcel's severability.  *United States v. 8.929 Acres of Land*, 36 F.4th 240, 266 (4th Cir. 2022) ("At bottom, the County has demonstrated sufficient evidence as to development plans for Southgate Road to illustrate that road's separate and distinct utility from Columbia Pike and South Joyce Street, thereby precluding summary judgment in favor of the Government."); *id.* at 256 ("That is to say, the County proffered evidence that Southgate Road is not only a road, but also a valuable piece of developable property for purposes of determining just compensation."); *id.* at 259 ("Drawing all reasonable inferences in favor of the County, they reflect that Southgate Road could be treated as a separate and distinct tract of land that held marketable value as potential development property divorced from any status as a roadway alone.").

The Court may rule for the County based on the United States' concessions alone.  First, the United States' own expert appraiser agrees that the Southgate Parcel is unique from the other taken County property and there exists no "larger parcel" beyond the Parcel for analysis. Second, the parties' expert appraisers also concur that the Parcel's highest and best use is

---

[1] Stipulation of Uncontested Facts ("Fact Stip.") ¶ 12, ECF No. 98.

1

residential development.  Third, the parties stipulate that the Parcel alone has a determinable fair market value.[2]  As the Court recognized when ordering this hearing, "whether 'Southgate Road holds a determinable market value' is relevant to determining whether it may be severable from the rest of the parcel" taken in this condemnation action.  Order at 4, Feb. 17, 2023, ECF No. 140 (quoting the Fourth Circuit's opinion in this case, *8.929 Acres of Land*, 36 F.4th at 258).  Fourth, for many years the United States recognized the Parcel's distinct value and accordingly offered an exchange of federally owned land to provide fair market value for taking that specific Parcel.  In sum, the Southgate Parcel has independent fair market value and—just like in any other takings case about fair market value—the County should be compensated accordingly.

Additional testimony and evidence at the hearing will only reaffirm this core conclusion.  As the County's witnesses will demonstrate, there is an acute need for more housing in Arlington County to meet both the growing population and affordability challenges.  Arlington County is a popular place to live and the housing and population forecasts indicate these trends will intensify in light of economic opportunities.  As the Fourth Circuit found, "[t]he record reflects the considerable demand for townhomes within the County, which will only increase as Amazon constructs a new headquarters in the area" ("HQ2").  *8.929 Acres of Land*, 36 F.4th at 265; *see also id.* at 266 ("Sufficient demand for the residential development of Southgate Road is therefore evident from the record.").  A vacant multi-acre land parcel is a rare asset within the County comprising only 26 total square miles—approximately one-third of the size of District of Columbia and one-sixteenth of the size of Fairfax County—most of which is already highly developed or federally owned.  Indeed, the County has long pursued and recently finalized "Missing Middle Housing" amendments to its zoning code to encourage townhomes and multi-

---

[2] Fact Stip. ¶ 35.

unit residences in lieu of large single family homes.  The Parcel is particularly well-situated to

help address that unmet housing demand given its location in a highly sought-after area of the

County in proximity to multiple key amenities such as access to Metrorail, highway, airport,

retail, and recreation facilities.  Thus, residential use is the Parcel's highest and best use because

it is "the highest and most profitable use for which the property is adaptable and needed or likely

to be needed in the reasonably near future."  *Uniform Appraisal Standards for Federal Land

Acquisitions*, U.S. Dep't. of Justice, 102 (2016) ("Yellow Book").[3]

       Arlington County will further demonstrate at the hearing that residential development of

the Southgate Parcel satisfies all four highest and best use criteria: "(1) physical possibility, (2)

legal permissibility, (3) financial feasibility, and (4) degree of profitability."  Yellow Book at

102-03 (citing *United States v. 69.1 Acres of Land*, 942 F.2d 290, 292 (4th Cir. 1991)); *see also

8.929 Acres of Land*, 36 F.4th at 253-54 (same).  Regarding legal permissibility, the County will

show that rezoning to permit development of multiple townhomes is "reasonably probable."  *See*

Yellow Book at 108; *8.929 Acres of Land*, 36 F.4th at 265 (citing *69.1 Acres of Land*, 941 F.2d

at 292, and *Olson v. United States*, 292 U.S. 246, 255 (1934)).  The Parcel's presently meager

uses as an oversized road to access a federal military base, an underutilized parking area, and

additional fallow land do not define its highest and best use.  *8.929 Acres of Land*, 36 F.4th at

254, 265 ("Notably, '[t]he owner may introduce evidence of the highest and best prospective use

even though he has no plans to sell the property or utilize it for that use.'") (citing *Bd. of Cnty.

Sup'rs v. United States,* 276 F.3d 1359, 1366 (Fed. Cir. 2002) (quotation omitted), which case

took place in nearby Prince William County, Virginia); *see also McCandless v. United States,*

---

[3] *See https://www.justice.gov/file/408306/download*; *see also* U.S. Ex. P-121 (Pl.'s Rule
(26(a)(3) Pretrial Disclosures, ECF 99).

298 U.S. 342, 345-46 (1936) ("The rule is well settled that, in condemnation cases, the most profitable use to which the land can probably be put in the reasonably near future may be shown and considered as bearing upon the market value . . . ."); *California v. United States,* 395 F.2d 261, 268 (9th Cir. 1968) ("Property is not valueless simply because the owner has not put it to use.").

Testimony at trial from multiple witnesses will explain that the Parcel is sufficiently sized to physically fit residential development while maintaining a road to access that development. The evidence will include at least two examples of conservative development scenarios that illustrate where townhomes or low-rise multi-family housing could be placed on the Parcel. In other words, where there now exists only a road, = both residential development and a road can exist. While the Parcel's current zoning allows construction of one single-family home as of right, there is a reasonable probability that the County as the zoning authority would have approved rezoning of the Parcel to allow for additional housing. Indeed, the County routinely grants such rezonings, including of areas similarly zoned as the Parcel, and disposes of existing roadways. Residences already exist in the Foxcroft Heights neighborhood immediately adjacent to the Parcel. Moreover, the Parcel presents a rare opportunity that residential developers would find attractive and financially viable. Finally, residential use would be more profitable than the Parcel's existing road use which generates zero revenue. Such residential development might have proceeded if annexation into Arlington National Cemetery ("ANC") had not been the Parcel's fate for at least the past two decades. In sum, unlike the taken segments of Columbia Pike and South Joyce Street, the Parcel's potential uses are not limited to a road.

Try as it may, United States cannot erase the Parcel's uniquely valuable status simply by aggregating it into a single condemnation action with Columbia Pike and South Joyce Street,

labeling it merely part of a "road network," and affording only replacement roads for the entire taking. The United States' hearing testimony and evidence will fail to support this unprecedented approach or disqualify the Parcel from non-road uses. First, unlike the County, the United States in this condemnation case tellingly will call no expert appraiser, expert developer, or other expert witness regarding the Parcel's amenability to development. Instead, the United States intends to call "rebuttal" expert witnesses only to attack the County's expert appraiser's opinions, which are neither the direct subject of this hearing nor essential to the Court's ruling on the Parcel's severability. Second, the United States' witnesses largely rely on purported deed restrictions which do not exist and on which they are unqualified to opine. Third, the United States' quibbling with the size or details of housing misses the central point that the Parcel can accommodate housing. Fourth, the United States' portrayal of administrative processes for rezoning as deterrents ignores that they are common practice and accepted as a reality of pursuing valuable development. Finally, the United States' conflation of the Parcel with Columbia Pike and assertion of County "benefits" from ANC expansion rely on immaterial distractions and revisionist history.

For the first time ever, the United States seeks to unilaterally employ a substitute facilities theory to escape paying fair market value for property it takes with determinable fair market value. If upheld, that gambit would not only deprive the County of financial just compensation for its valuable Parcel, but also upset basic takings law by allowing a condemnor to escape paying market value when it so chooses, including by aggregating such land into a single taking with other land without development value. The Court thus should recognize the Parcel's severability. The Court may then proceed in the normal course to submit this case for a jury determination of the precise amount of financial just compensation owed to the County.

## II.    WITNESSES ARLINGTON COUNTY INTENDS TO CALL AT THE HEARING

**Luis Araya**
Engineer, Transportation Bureau
Department of Environmental Services, Arlington County

**Anthony Fusarelli**
Planning Director
Department of Community Planning, Housing and Development, Arlington County

**Dennis Leach**
Former Director, Transportation Bureau
Department of Environmental Services, Arlington County

**David Lennhoff**
Lennhoff Real Estate Consulting, LLC

**Timothy O'Hora**
Real Estate Bureau Deputy Chief
Department of Environmental Services, Arlington County

**William O'Neill**
O'Neill & Associates, L.C.

**Mark Schwartz**
Arlington County Manager

**Andrew VanHorn**
President, Dweck Properties

## III.    ARLINGTON COUNTY'S PROPOSED FINDINGS OF FACT

### A.    The Southgate Parcel Is the Distinct and Relevant Property for Analysis.

1.   The Parcel totals approximately 4.23 acres.  About 3.6 acres has been used as the existing roadway and for parking.  An additional approximately 0.6 acres located off the paved street consists of a portion of the existing parking lot and some grassland.[4]

2.   Prior to the Date of Taking (June 24, 2020), Arlington County owned the Parcel in fee simple.[5]

---

[4] Fact Stip. ¶ 28.
[5] Fact Stip. ¶¶ 8, 10.

3. The United States effectuated a total taking of the Parcel from the County.[6]

4. The United States' filed complaint and description of estates taken in this action referred to the taking of multiple roads, but only as to the Parcel included "adjacent land."[7]

5. Columbia Pike has always been a public right-of-way for transportation. It was originally created as a turnpike via federal legislation. It was conveyed to Arlington County by the Virginia Department of Transportation ("VDOT") as an established public right-of way.[8]

6. Southgate Road never has been dedicated, or offered for dedication, as a public right-of-way.[9]

7. Columbia Pike is designated as a Principal Arterial on the County's Master Transportation Plan.[10]

8. Southgate Road is designated as a Type B Minor Arterial on the County's Master Transportation Plan.[11]

9. The United States' 2019 Environmental Assessment ("EA") for ANC expansion labels Columbia Pike an urban principal arterial route, and South Joyce Street a minor arterial.[12]

10. The United States' EA labels Southgate Road as a local access road.[13]

---

[6] Compl. Schedule E, ECF No. 1-7; National Defense Authorization Act of 2017 ("NDAA"), Pub. L. No. 114-328, § 2829A(a)(1)(A) (specifying the "parcels of real property" the United States may acquire from the County, including "all right, title, and interest" therein).

[7] Compl. ¶ 10, ECF No. 1; Compl. Schedule E, ECF No. 1-7.

[8] T. O'Hora testimony; Act to Incorporate a Company for Making Certain Turnpike Roads in the District of Columbia, Ch. 26, 2 Stat. 570, 573 (1810); Deed, Clerk of the Cir. Court (Arlington County, VA), Book 4399, Page 2015 (Recorded Oct. 5, 2010) (Doc. No. 2010278017).

[9] D. Leach testimony; T. O'Hora testimony; *see* VA Code Ann. § 33.2-914.

[10] D. Leach testimony; Arlington County ("AC") Exhibit ("Ex.") 7, Arlington Master Transportation Plan Streets Element. "AC Ex." numbers herein correspond to the County's exhibit list in its previously filed pre-trial Rule 26(a)(3)(A) disclosures, ECF No. 106—though the County will only be introducing a subset of those exhibits for the purposes of this hearing.

[11] D. Leach testimony; AC Ex. 7, Arlington Master Transportation Plan Streets Element.

[12] AC Ex. 10, EA, Figure 3-8.

[13] AC Ex.10, EA Figure 3-8.

11. Columbia Pike is a major thoroughfare in the County and regionally. Its four lanes carry tens of thousands of vehicles per day and the County's highest ridership bus line. It is the primary connection between Columbia Pike corridor and the Pentagon, Pentagon City, Crystal City, Potomac Yard, and Metrorail stations.[14]

12. At the time of the taking, Southgate Road was primarily a defense access road to federal Joint Base Myer-Henderson Hall ("Base"). Its two lanes carried approximately 3,400-4,000 vehicles per day, mainly to and from the Base.[15] Southgate Road's width is obsolete and excessive relative to similarly traveled and designated roads in the County and accommodated on-street parking alongside travel.[16] The road had previously been used to access the Navy Annex, a large office building that sat adjacent to the Southgate Parcel until approximately 2013 when it was demolished.[17]

13. The United States' expert appraiser concurs that the Parcel's highest and best use deviates from the other County property that the United States condemned in this case. He concluded there is no "larger parcel" other than the Parcel. Specifically, he dismissed the larger parcel constituting all County property that the United States took in this action, rather than the standalone Parcel, because the other taken tracts can only be used as streets.[18]

**B.    Arlington County Faces a Housing Deficit with Inherent Constraints to Address It.**

14. Arlington County has insufficient housing to meet the growing demand.[19]

---

[14] D. Leach testimony.
[15] D. Leach testimony; Pl.'s Mem. in Supp. of Mot. Summ. J. at 14, ECF No. 101.
[16] D. Leach testimony; AC. Ex. 65, *Columbia Pike Neighborhoods Area Plan* at 3.28 ("In comparison with other street cross sections in Arlington, Southgate Road has an obsolete and excessively wide cross-section.")
[17] D. Leach testimony; A. Fusarelli testimony; T. O'Hora testimony.
[18] D. Lennhoff testimony.
[19] A. Fusarelli testimony; M. Schwartz testimony; A. VanHorn testimony; W. O'Neill testimony.

15. Arlington County is the geographically smallest self-governing county in the nation, totaling only 26 square miles, almost a quarter of which (including ANC) is federally owned.[20]

16. The County's population is projected to grow approximately 20 percent by 2045.[21]

17. Based on official Metropolitan Washington Council of Governments regional housing targets, the County requires 25,000-30,000 additional housing units within the next ten years.[22]

18. Arlington County has approved approximately 2,000 new residential units annually over the last five years, of which approximately a third are completed or under construction.[23]

19. Most ideal locations for additional housing in the County are already developed, requiring creative solutions to the County's housing needs.[24]

20. Multi-acre contiguous undeveloped parcels are almost nonexistent in the County.[25]

21. The R-20 District provides the largest minimum lot size for single family homes in Arlington County of 20,000 square feet, which is less than half of one acre, and is primarily concentrated in the northern areas of the County.[26]

22. Of the approximately 27,000 lots zoned for single family detached residential in Arlington County, less than 12 designated single family detached homes are located on property larger than 2 acres, and less than 4 designated single family detached homes are located on property larger than 3 acres.[27]

---

[20] A. Fusarelli testimony; Arlington County, *Arlington Fast Facts*, https://www.arlingtonva.us/Government/Projects/Data-Research/Fast-Facts#:~:text=Arlington%20is%20a%20world%2Dclass,less%20than%2026%20square%20miles.
[21] A. Fusarelli testimony; Arlington County, *Arlington Fast Facts*, https://www.arlingtonva.us/Government/Projects/Data-Research/Fast-Facts#:~:text=Arlington%20is%20a%20world%2Dclass,less%20than%2026%20square%20miles.
[22] A. Fusarelli testimony.
[23] A. Fusarelli testimony.
[24] A. Fusarelli testimony.
[25] A. Fusarelli testimony.
[26] Arlington County Zoning Ordinance at 5-6 (Mar. 18, 2023); A. Fusarelli testimony.
[27] A. Fusarelli testimony.

23. The County has taken numerous steps to encourage increased density of development including, beginning in 2019, undertaking a Missing Middle Housing Study. That study examined potential policy and zoning changes to increase density of housing development throughout the County, particularly for townhomes and other housing types that are at lower price points and in shorter supply than detached single-family homes in the County.[28]

24. On March 22, 2023, the County Board officially adopted General Land Use Plan and Zoning Ordinance amendments to enable by-right construction of townhomes and duplex to six-plex residential buildings on certain lots that previously allowed only detached single-family homes.[29]

**C.      The Southgate Parcel Is Ideally Situated for Residential Development.**

25. It is undisputed that the Southgate Parcel has a determinable fair market value.[30]

26. The Parcel consists of two areas comprising Lot 104-1, with an approximately 1,344-foot length, 282-foot width on the east end, and 108-foot width on the west end.[31]

27. The Parcel is located in an area with high surrounding land values.[32]

28. Most growth in the County is forecast to occur in Crystal City, in Pentagon City, and along Columbia Pike. The Parcel sits in the middle of those areas.[33]

---

[28] A. Fusarelli testimony; A. VanHorn testimony.
[29] *Arlington County Board Meeting Agenda Item* (Mar. 18, 2023), https://arlington.granicus.com/MetaViewer.php?view_id=2&event_id=1844&meta_id=217182; Arlington County Press Release, *County Board Adopts Expanded Housing Options*, Mar. 22, 2023, https://www.arlingtonva.us/About-Arlington/Newsroom/Articles/2023/County-Board-Adopts-Expanded-Housing-Options; A. Fusarelli testimony; A. VanHorn testimony.
[30] Fact Stip. ¶ 35.
[31] Fact Stip. ¶ 22; T. O'Hora testimony.
[32] A. Fusarelli testimony; W. O'Neill testimony; A. VanHorn testimony.
[33] A. Fusarelli testimony; AC Ex. 40, Columbia Pike/Washington Boulevard Interchange Modification Report at 208.

29. The Parcel is adjacent to the Base.[34]

30. Located within approximately one mile of the Parcel are the Pentagon, Pentagon City, Crystal City, National Airport, a Virginia Railway Express commuter rail station, and multiple Metrorail stations.[35]

31. The Parcel has access to I-395, Washington Boulevard, Columbia Pike, and other major roadways to major employment centers (including the new Amazon HQ2), retail areas, and recreational amenities.[36]

32. No buildings or structures exist on the Parcel. Development thus would require no demolition. Asphalt removal would be part of site preparation work for any construction.[37]

**D.  The Parcel's Highest and Best Use Is Residential Development, Not Just a Road.**

33. The parties' expert appraisers both agree that the Southgate Parcel's highest and best use is for residential development. They disagree only as to the extent of such development, namely whether the 4.23-acre Parcel can host only a single home or a more substantial residential development.[38]

34. The testimony and evidence support that the Southgate Parcel could host development of townhomes or other multi-family residences.[39]

35. Townhome development on the Southgate Parcel is physically possible:

---

[34] AC Ex. 11, Google Map Image of Southgate Road and ANCSE expansion area; A. Fusarelli testimony.
[35] AC Ex. 11, Google Map Image of Southgate Road and ANCSE expansion area; A. Fusarelli testimony; A. VanHorn testimony; A. Fusarelli testimony.
[36] AC Ex. 11, Google Map Image of Southgate Road and ANCSE expansion area; A. Fusarelli testimony; A. VanHorn testimony; A. Fusarelli testimony.
[37] AC Ex. 11, Google Map Image of Southgate Road and ANCSE expansion area; A. Fusarelli testimony; A. Fusarelli testimony; A VanHorn testimony.
[38] W. O'Neill testimony; D. Lennhoff testimony.
[39] A. Fusarelli testimony; A. VanHorn testimony; W. O'Neill testimony; T. O'Hora testimony; L. Araya testimony.

a.  The Parcel's physical dimensions encompassing current Southgate Road and adjacent land are sufficiently sized and oriented to accommodate development of townhomes.[40]

b.  The County prepared and validated multiple residential development scenarios for the Parcel to inform the County's position in negotiations and any litigation.[41]

c.  County planning staff often prepare such development scenarios to help both the public and private sector envision more productive uses for property in the County.[42]

d.  The development scenarios were intentionally conservative regarding size, height, and density of housing.[43]

e.  The development scenarios are consistent with their respectively assigned rezoning districts.[44]

f.  The development scenarios are not exhaustive of possible configurations of residential development on the Parcel.[45]

g.  The County's expert appraiser independently reviewed the development scenarios and engaged with County staff to resolve his questions regarding them.[46]

h.  The County's developer expert in this case independently reviewed and made changes to the County's development scenarios for the purposes of his opinions.[47]

---

[40] Compl. Schedule E, ECF No. 1-7; A. Fusarelli testimony; L. Araya testimony; A. VanHorn testimony; W. O'Neill testimony.

[41] AC Ex. 14, Development Option 1; AC Ex. 15, Development Option 2; A. Fusarelli testimony; L. Araya testimony.

[42] A. Fusarelli testimony.

[43] A. Fusarelli testimony; L. Araya testimony; W. O'Neill testimony.

[44] A. Fusarelli testimony; L. Araya testimony.

[45] A. Fusarelli testimony; L. Araya testimony; A VanHorn testimony; W. O'Neill testimony.

[46] A. Fusarelli testimony; W. O'Neill testimony; Emails between County and W. O'Neill, Exhibit 23.

[47] A. VanHorn testimony.

i.   Residential development of the Parcel requires street access and can also accommodate retention of a publicly accessible roadway connecting to the Base.[48]

j.   A narrower Southgate Road would still maintain its defense access road use.[49]

k.   The width of the new South Nash Street (approximately 55 feet) mirrors the width of potentially retained road access in the County's development scenarios for the Parcel.[50]

36. Townhome development on the Southgate Parcel is legally permissible following a reasonably probable rezoning:

a.   The County Board makes final decisions on rezoning and re-planning of real property in Arlington County.[51]

b.   The County Board considers the recommendations of the County Manager.[52]

c.   The County Manager's recommendations are guided by analysis by the County's Department of Community Planning, Housing and Development, including its Planning Division.[53]

d.   The United States has no more authority than any other neighboring property owner over County land use decisions on County-owned property.[54]

---

[48] A. Fusarelli testimony; L. Araya testimony; A. VanHorn testimony; W. O'Neill testimony.
[49] D. Leach testimony; AC. Ex. 65, *Columbia Pike Neighborhoods Area Plan* at 3.28.
[50] AC Ex. 6, 2013 Memorandum of Understanding ("MOU"), §§ IV, V; AC Ex. 10, EA at Figure 2-2; AC Ex. 54, HNTB Meeting Memorandum; AC Ex. 14, Development Option 1; AC Ex. 15, Development Option 2; A. Fusarelli testimony; L. Araya testimony.
[51] Fact Stip. ¶ 34.
[52] M. Schwartz testimony; A. Fusarelli testimony.
[53] M. Schwartz testimony; A. Fusarelli testimony.
[54] A. Fusarelli testimony.

e.  As discussed above, the County is in need of additional housing, and has already adopted County-wide planning and zoning amendments for denser housing development in single-family areas.[55]

f.  The Parcel's current S-3A zoning already allows for some residential development as of right.[56]

g.  Residences already exist immediately adjacent to the Parcel and ANC in the Foxcroft Heights neighborhood.[57]

h.  Those residences feature the same zoning—R2-7 and RA8-18—utilized in the County's development scenarios for the Southgate Parcel.[58]

i.  A developer proposing to re-plan and rezone underutilized land to facilitate townhome development reasonably could expect a favorable reception by County planning staff.[59]

j.  The County Board has approved numerous prior rezonings from S-3A or other similarly zoned or County-owned land to more intensive residential districts.[60]

k.  Residential developments exist in other areas adjacent to ANC.[61]

---

[55] *See supra* ¶¶ 14–24.

[56] Arlington County Zoning Ordinance at 4-5; A. Fusarelli testimony; W. O'Neill testimony; D. Lennhoff testimony.

[57] AC Ex. 11, Google Map Image of Southgate Road and ANCSE expansion area; AC Ex. 65, *Columbia Pike Neighborhoods Area Plan* at 3.22–3.30; A. Fusarelli testimony; A. VanHorn testimony; W. O'Neill testimony.

[58] Arlington County Zoning Map, https://gis.arlingtonva.us/gallery/map.html?webmap=ac7ff3875bcb4ed4bd79e19014e1caa9; AC Ex. 40, 2017 Interchange Modification Report at 198-199; AC Ex. 14, Development Scenario 1; AC Ex. 15, Development Scenario 2.

[59] A. Fusarelli testimony; W. O'Neill testimony.

[60] AC Ex. 2, *Prior Rezoning or Disposition of County-Owned or Publicly-Zoned Land*; A. Fusarelli testimony.

[61] AC Exs. 16, 18; A. Fusarelli testimony; A. VanHorn testimony; W. O'Neill testimony.

l.   The County Board has approved numerous amendments to the General Land Use Plan to allow for more intensive multi-use or residential projects.[62]

m.  The County often conducts dispositions of existing roadways, both for dedicated public rights-of-way and undedicated roads like Southgate Road.[63]

n.The United States or the County did not need to undertake any vacation or abandonment action to close Southgate Road after the Date of Taking.[64]

o.  When the United States requested the County to end parking on Southgate Road in August 2020, the County immediately did so via signage.[65]

p.  The Parcel has remained idle because it has been the subject of anticipated ANC expansion since 1999.[66]

37. Townhome development on the Southgate Parcel is financially feasible:

a.   As discussed above, housing in Arlington County is in high demand and commands considerable prices, and townhome supply is especially scarce in the County.[67]

b.  Developers are always looking for opportunities to meet unmet and growing housing demand in Arlington County.[68]

c.   A multi-acre undeveloped parcel is a unique opportunity in the densely developed County.[69]

---

[62] AC Ex. 8, GLUP Amendments 2001 – present; A. Fusarelli testimony.
[63] A. Fusarelli testimony; D. Leach testimony; T. O'Hora testimony; L. Araya testimony.
[64] T. O'Hora testimony.
[65] T. O'Hora testimony.
[66] D. Leach testimony; A. Fusarelli testimony; *8.929 Acres of Land*, 36 F.4th at 264 ("[T]here is competent record evidence explaining that the County made no efforts to develop Southgate Road in the decades leading up to the underlying litigation at least in part because of the Project.").
[67] *See supra* ¶¶ 14–24; A. VanHorn testimony; W. O'Neill testimony.
[68] A. VanHorn testimony; W. O'Neill testimony.
[69] A. VanHorn testimony; W. O'Neill testimony.

d. As discussed above, the Parcel is located in an area that has high land values and significant amenities.[70]

e. The County's developer expert's review and financial underwriting analysis confirms the attractiveness and viability of the Parcel's development for townhomes.[71]

38. Townhome development on the Southgate Parcel is maximally productive:

a. The Parcel presently generates no revenue, including for the County.[72]

b. An untolled road use has no economic value.[73]

c. Sale of the Parcel and construction of townhomes thereon would generate sale revenue and newly taxable property for the County.[74]

**E. The Parties' Course of Dealing Mutually Recognized the Southgate Parcel's Unique and Singular Value.**

39. For many years, United States and Arlington County had negotiated for an exchange of federally-owned land for the County-owned Southgate Parcel.[75]

40. Beginning in 2007, the County and the U.S. Department of Defense's Washington Headquarters Service ("WHS") negotiated a land exchange whereby WHS would acquire the County-owned Southgate Parcel for ANC expansion and the County would acquire an approximately equal amount of federally-owned acreage where the Navy Annex was located.[76]

41. On September 17, 2008, the County and United States entered into a land exchange agreement for this one-for-one exchange of property.[77]

---

[70] *See supra* ¶¶ 27–31.
[71] A. VanHorn testimony.
[72] A. Fusarelli testimony; A. VanHorn testimony; W. O'Neill testimony.
[73] A. Fusarelli testimony; A. VanHorn testimony; W. O'Neill testimony.
[74] A. Fusarelli testimony; A. VanHorn testimony; W. O'Neill testimony.
[75] Fact Stip. ¶ 29.
[76] AC Ex. 5, 2008 Exchange Agreement; D. Leach testimony; T. O'Hora testimony.
[77] AC Ex. 5, 2008 Exchange Agreement; D. Leach testimony; T. O'Hora testimony.

42. The 2008 Agreement did not include a realigned Base access road.[78]

43. The United States terminated the 2008 agreement in 2012, after the federally-owned land to be exchanged was administratively transferred from WHS to the U.S. Army.[79]

44. The Army then offered the County—in lieu of the 2008 agreement's Navy Annex land which now would be federally retained for ANC expansion—a greater amount of land on the south side of Columbia Pike in exchange for the Southgate Parcel. The County was interested in that land including for purposes of a maintenance facility for a Columbia Pike streetcar project it was considering at the time.[80]

45. The Army also proposed for the first time to further expand ANC to include a County-owned segment of Columbia Pike, and to realign that segment to the southeast.[81]

46. Subsequent to the 2008 agreement, the Army reversed course and instead decided to retain the existing southern Base entrances along current Southgate Road. Thus, the Army added a new federal defense access road, labeled as "Realigned Southgate Road," which when constructed will be named South Nash Street.[82]

47. In 2013, the County and the Army entered into a Memorandum of Understanding ("MOU") memorializing the scope of the new agreement.[83]

48. In good faith reliance on the 2013 MOU and the County obtaining more land thereunder, the County both expended more than $300,000 on an Interchange Modification

---

[78] AC Ex. 5, 2008 Exchange Agreement; D. Leach testimony; T. O'Hora testimony.
[79] AC Ex. 6, 2013 MOU; D. Leach testimony; T. O'Hora testimony.
[80] AC Ex. 6, 2013 MOU; AC Ex. 65, *Columbia Pike Neighborhoods Area Plan* (referencing streetcar proposal throughout); D. Leach testimony; T. O'Hora testimony; M. Schwartz testimony.
[81] AC Ex. 6, 2013 MOU, at IV; D. Leach testimony; T. O'Hora testimony.
[82] Fact Stip. ¶ 20; AC Ex. 6, 2013 MOU; County's Response to Pl.'s Mot. Summ. J. Ex. 22 at No. 12, ECF No. 114-20; D. Leach testimony; T. O'Hora testimony.
[83] AC Ex. 6, 2013 MOU; D. Leach testimony; T. O'Hora testimony.

Report ("IMR") of Columbia Pike/Southgate Road/Washington Boulevard Interchange, and discussed with the Army—but never committed to—potential allocation of $10 million in transportation funds awarded to the County by the Northern Virginia Transportation Authority for multimodal improvements along broader Columbia Pike that the County was already pursuing independent of ANC expansion.[84]

49. The County never discussed or offered County funding toward ANC expansion or its resulting roads realignment except as part of a larger agreement for a land exchange.[85]

50. As part of the land exchange discussions, the County, federal agencies, and VDOT developed a proposed roadway realignment for the roads that were to be acquired by ANC.[86]

51. The United States then again walked away from the parties' agreement. In 2017, the United States disavowed the 2013 MOU's land exchange, electing instead to retain all land to maximize the ANC expansion area.[87]

52. After it terminated the 2013 MOU, the United States purchased the IMR from the County for approximately $300,000.[88]

---

[84] AC. Ex 10, 2019 Environmental Assessment ("Arlington County has planned, designed, and constructed improvements along three miles of the existing Columbia Pike corridor … near the Pentagon since 2005. Improvement to date include: … bicycle accommodations; wider sidewalks; enhanced pedestrian crossings; and enhanced streetscape"); AC Ex. 40, 2017 Interchange Modification Report; AC Ex. 65, *Columbia Pike Neighborhoods Area Plan* at ii, 1.8, 3.3; D. Leach testimony; T. O'Hora testimony; M. Schwartz testimony.
[85] D. Leach testimony; T. O'Hora testimony.
[86] D. Leach testimony; T. O'Hora testimony; M. Schwartz testimony.
[87] AC Ex. 78, June 17, 2017 News Release; Pl.'s Mem. in Supp. of Mot. Summ. J. at 11–12 n.7, ECF No. 101; County's Response to Pl.'s Mot. Summ. J. Ex. 22 at No. 10, ECF No. 114-20; D. Leach testimony; T. O'Hora testimony; M. Schwartz testimony.
[88] D. Leach testimony.

53. The United States never offered the County any financial compensation or other land for the Southgate Parcel instead of the federal land to be exchanged under the 2008 agreement or the 2013 MOU.[89]

54. Nearly 18 months after ending land exchange discussions, the United States first advised that, under a new "substitute facilities" theory, the County would receive no just compensation for the Southgate Parcel beyond the ANC expansion project components. That is, whereas under the 2013 MOU the United States was to provide a realigned Columbia Pike, a new South Nash Street, and several acres of federal land, the United States now believed it sufficient to simply omit the federal land.[90]

55. The County was unable to separately contract with the United States to convey its Columbia Pike property upon the parties' agreed terms for the realigned Columbia Pike segment. Rather, the United States proposed only "relocation" agreements that would concede the County's receipt of adequate "substitute facilities" for *all* County-owned property in the Project area.[91] The County's response included that the United States had yet to provide just compensation for the Southgate Parcel.[92]

56. Though the parties' disagreement following collapse of the land exchange agreements was limited to just compensation only for the Southgate Parcel, the United States appended the County's Columbia Pike and South Joyce Street segments into its filed complaint.[93]

---

[89] D. Leach testimony; T. O'Hora testimony; M. Schwartz testimony.
[90] AC Ex. 45, February 27, 2019 Letter from S. Lewis to M. Schwartz; M. Schwartz testimony.
[91] AC Ex. 45, February 27, 2019 Letter from S. Lewis to M. Schwartz.
[92] M. Schwartz testimony
[93] Fact Stip. ¶ 12; Compl., ECF No. 1, Compl. Schedule E, ECF No. 1-7.

**F.      The County Has Not Received Just Compensation for the Southgate Parcel.**

57. No evidence indicates that, prior to this case, the United States had ever utilized substitute facilities over the condemnee's objection as just compensation for a taking of undisputedly valuable property.

58. The County never agreed to substitute facilities as just compensation for the Southgate Parcel.[94]

    a.   The County consistently insisted on payment of fair market value in money or land for its loss of the Southgate Parcel.[95]

    b.   To facilitate agreement on design of the realignment of the segment of Columbia Pike that United States proposed to annex into ANC, the parties' respective leaders (Mark Schwartz for the County and Katharine Kelley for the United States) engaged directly and deliberately siloed and resolved those Columbia Pike negotiations apart from the issue of just compensation for the Southgate Parcel.[96]

    c.   The parties agreed on just compensation for the United States' taking of Columbia Pike before this condemnation action was filed.[97]

59. Realignment of Columbia Pike would be the same if the United States had taken just the Columbia Pike property and not the Southgate Parcel.[98]

---

[94] M. Schwartz testimony.
[95] AC Ex. 78, June 15, 2017 News Release; AC Ex. 82, September 27, 2019 Letter from M. Schwartz to K. Perdue ("[t]he County continues to stress the need for payment of just compensation to the County for the Army's taking of Southgate Road"); D. Leach testimony; T. O'Hora testimony; M. Schwartz testimony.
[96] AC Ex. 93, Aug. 13, 2018 Letter from K. Kelley to M. Schwarz; AC Ex. 94, Oct. 9, 2018 Letter from K. Kelley to M. Schwartz; M. Schwartz testimony; K. Kelley testimony.
[97] Fact Stip ¶ 12; M. Schwartz testimony; D. Leach testimony.
[98] M. Schwartz testimony; D. Leach testimony; A. Fusarelli testimony.

a.  No evidence suggests that the parties' agreed width, design, and features of the realigned Columbia Pike segment is a function of the retention or closure of Southgate Road.

b.  Columbia Pike's final agreed width was driven not only by Base-bound traffic utilizing Columbia Pike instead of Southgate Road, but also by (i) the proposed relocation of the Cemetery operations complex to the south side of Columbia Pike; (ii) the United States' proposal to access the relocated Cemetery operations complex through an underground tunnel, thereby limiting expansion opportunities for utilities; (iii) enhanced multimodal transportation; and (iv) accommodation of future growth such as Amazon's HQ2.[99]

c.  The realigned Columbia Pike segment improvements parallel those the County already is making to Columbia Pike west of ANC to the Fairfax County line.[100]

d.  There is no evidence that the dedicated bike lane on the realigned Columbia Pike segment is due only to the taking of the Southgate Parcel.  The United States conceded that "[w]hether the existing Columbia Pike is suitable for bicycle travel is not material."[101]

e.  Unlike for Southgate Road, the United States never proposed to permanently close the taken segment of Columbia Pike.[102]

f.  No evidence suggests the United States considered retention of a publicly accessible road in the existing Southgate Road footprint in conjunction with development of the Southgate Parcel.

60. South Nash Street is not a substitute facility for the County for the taken Parcel.

---

[99] M. Schwartz testimony; D. Leach testimony.

[100] AC Ex. 7, Arlington Master Transportation Plan Streets Element; AC Ex. 29, May 7, 2020 County Board Certification; AC Ex. 37, Arlington County Master Transportation Plan – Goals and Policies Document; AC Ex. 65, *Columbia Pike Neighborhoods Area Plan* at ii, 1.8, 3.3*;* M. Schwartz testimony; D. Leach testimony.

[101]  Pl.'s Reply in Supp. of Mot. Summ. J. at 8, ECF No. 116.

[102] M. Schwartz testimony; D. Leach testimony.

a.   Since adopting its substitute facilities theory, the United States offered South

Nash Street as the specific substitute facility for the Southgate Parcel.[103]

b.   Construction of South Nash Street to maintain the United States' desired

southern Base access presently served by Southgate Road is an amenity for the United States.[104]

c.   No evidence suggests the United States ever sought to remove the new South

Nash Street from its ANC expansion plans.

d.   South Nash Street qualified for federal funding through the Defense Access

Roads Program only because it is an essential defense access road.[105]

e.   Construction of a new South Nash Street and realignment of Columbia Pike

did not depend on County funding.[106]

f.   South Nash Street's only purported benefit to the County is partial mitigation

of increased traffic in the adjacent Foxcroft Heights neighborhood created by United States' own

retention of southern Base access and expansion of ANC.[107]

g.   The United States previously estimated little traffic impact from closing

Southgate Road without a replacement.[108]

---

[103] AC Ex. 10, EA at Figure 2-2; AC Ex. 47, second draft Relocation Agreement ¶ 5(a); M.
Schwartz testimony.
[104] AC Ex 6, §§ I, IV, V.D, 2013 MOU (new South Nash Street's purpose is "to meet the current
and future access needs of Joint Base Myer-Henderson Hall"); D. Leach testimony.
[105] 23 C.F.R. § 660.511; AC Ex. 56, Defense Access Road Program description; D. Leach
testimony.
[106] D. Leach testimony.
[107] D. Leach testimony.
[108] AC Ex. 9, 2014 Programmatic Environmental Assessment at ES-10–ES-11, 3-55–3-70; D.
Leach testimony.

h.    The United States' own study concluded that the transportation level of service would be acceptable even without a replacement road.[109]

i.    Vehicles currently utilizing Southgate Road, including large military vehicles, might not use the new South Nash Street or streets through Foxcroft Heights, but instead might use other Base access points via alternate routes.[110]

j.    The County has other traffic calming alternatives to divert any ANC expansion-related traffic increases from the Foxcroft Heights neighborhood.[111]

## IV.    ARLINGTON COUNTY'S PROPOSED CONCLUSIONS OF LAW

This hearing on the Southgate Parcel's severability turns on its status as valuable, developable property distinct from the undisputedly road-only use of the simultaneously taken segments of Columbia Pike and South Joyce Street, which is an issue of fact.  As outlined by the Fourth Circuit in this case, and as discussed above, the Court's legal framework for that factual inquiry is application of the four criteria for highest and best use, and not simply the Parcel's present use.  Though that factual inquiry is sufficient for the Court to rule for the County that the Parcel is severable, the County also rebuts below erroneous legal arguments that the United States has previously raised and that underscore the impropriety of substitute facilities as just compensation for the Southgate Parcel.

### A.    The County's Fee Simple Ownership of the Southgate Parcel Was Unrestricted.

The United States' and its witnesses' repeated contention that deed restrictions render the Southgate Parcel undevelopable is meritless and unsupported.  The burden is on the United

---

[109] AC Ex. 9, 2014 Programmatic Environmental Assessment at ES-10–ES-11; D. Leach testimony.
[110] D. Leach testimony.
[111] AC Ex. 65, *Columbia Pike Neighborhoods Plan* at 3.28; D. Leach testimony.

States as the party trying to show a restriction. *See, e.g.*, *Mulford v. Walnut Hill Farm Grp.*, 282 Va. 98, 112 (2011) ("It is well-established that the party who claims an easement bears the burden of proving the fact."). The United States cannot carry that burden because the County undisputedly owns the Parcel in *fee simple*, and no deed or title report states otherwise. Indeed, the Fourth Circuit already cast doubt on the United States' argument, instead finding that "a reasonable factfinder could conclude that the County's ownership of Southgate Road was unrestricted by deed encumbrances of record." *8.929 Acres of Land*, 36 F.4th at 263. Moreover, the Fourth Circuit recognized that the possibility of residential development of the Parcel maintaining a publicly accessible road may moot the issue. *Id.* ("And, at any rate, a reasonable factfinder could determine that even if such a restriction did exist, it would not necessarily limit Southgate Road's development because, as the County represents, 'redevelopment of the Southgate Parcel can accommodate a throughway for public use.'").

At the outset, the United States stipulates that the County owned the Southgate Parcel in fee simple prior to the Date of Taking. Fact Stip. ¶ 10. The United States also recognizes that fee simple is the broadest possible estate in property. Yellow Book at 91. Fee simple means "[a]bsolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power, and escheat." *The Dictionary of Real Estate Appraisal* at 78 (5th ed.); W. O'Neill testimony. Thus, the United States' inference of any deed restriction on use of the Parcel is fundamentally inconsistent with the County's fee simple ownership.

Furthermore, the deeds conveying the Parcel to the County contain no such encumbrance. The County acquired the Southgate Parcel from the United States via two deeds in 1956 and 1963. Fact Stip. ¶ 22; *8.929 Acres of Land*, 36 F.4th at 245; U.S. Ex. P-44, Pl.'s Mot. Summ. J.

Ex. 9, ECF No. 100-10 (copy of 1956 deed); U.S. Ex. P-42, Pl.'s Mot. Summ. J. Ex. 10, ECF

No. 100-11 (copy of 1963 deed).  The 1956 deed references a "Navy Annex Access Road,

Defense Access Project DA-NR-39" and the maintenance of a "project constructed thereon."

U.S. Ex. P-44.  It does not define that "project," much less as the entire existing Southgate Road.

*Id.*  Nor does it define the boundaries of any "Navy Annex Access Road" or state it must

encompass the entire acreage covered by the deed.  *Id.*  Also, the plat accompanying the 1956

deed is entitled "surplus property," indicating the United States' willingness to dispose of such

property.  *Id.*  It is undisputed that the referenced Navy Annex was completely demolished

around 2013, leaving nothing specific under the deed to access.  Fact Stip. ¶ 26.  The only

express "easement" in the 1956 deed is for an electric utility line not implicated in this case.  In

turn, the 1963 quitclaim deed adds no encumbrance.  Though the United States has claimed in

this litigation that the 1963 deed was for widening of Southgate Road, there is no such condition

or request, no widening of Southgate Road occurred during County ownership, and Congress has

superseded "40 U.S.C. § 345c" cited in the deed.  U.S. Ex. P-42.  Neither deed imposes an

obligation that runs with the land or otherwise limits the County's disposition of the Parcel.

Perhaps most importantly, neither deed contains a reverter to the United States under any

circumstance, as would be expected to enforce any limits on future uses of the Parcel.  Thus, the

County is under no obligation to preserve the existing Southgate Road.

       The United States in this litigation has also asserted that a parking easement exists on part

of the Parcel.  Not so.  Nothing imposed a legal obligation on the County to provide or restrict

parking on its Parcel owned in fee simple.  Indeed, at the United States' request in this litigation,

the County cooperatively and summarily terminated all parking along Southgate Road in August

2020.  Specifically, the United States' previous reference to a 1995 quitclaim deed between

VDOT and the United States regarding part of the Parcel imposes no parking obligation, either. U.S. Ex. P-41. VDOT never owned the Southgate Parcel land or interest it purported to convey therein, because there is no evidence that the County ever conveyed such an interest in its Parcel to VDOT in the first instance.

**B.**     **Substitute Facilities Are Irrelevant to the Southgate Parcel's Just Compensation.**

Neither the United States nor any court has *ever* previously deemed substitute facilities as just compensation *except* when the condemnee so agrees or fair market value is undeterminable. Here, as stipulated, neither condition exists for the Southgate Parcel to displace the usual payment of fair market value. Fact Stip. ¶¶ 12, 35. Consequently, substitute facilities are irrelevant to just compensation for taking that Parcel.

It is no accident that substitute facilities cases are rare, narrow, and dated. *See* Pl. Reply in Supp. of Pl.'s Mot. for Prot. Order 6, ECF No. 91 ("most [substitute facilities cases] date to the World War II era."). That is because just compensation begins, and typically ends, with the fair market value of the taken property. *E.g.*, *Kirby Forest Indus. v. United States*, 467 U.S. 1, 10 (1984) ("'Just compensation,' we have held, means in most cases the fair market value of the property on the date it is appropriated."). By contrast, "[o]ther measures of 'just compensation' are employed only 'when market value [is] too difficult to find, or when its application would result in manifest injustice to owner or public . . . .'" *Id.* at 10 n.4 (citation omitted).

Specifically, "courts invoke the substitute facilities doctrine only where fair market value cannot be determined." *United States v. 10.56 Acres*, No. C07–1261RAJ, 2010 WL 415244, at *2 (W.D. Wa. Jan. 27, 2010); *see also California v. United States*, 395 F.2d 261, 264, 266 (9th Cir. 1968). Indeed, the unanimous Supreme Court has *criticized* a substitute facilities approach because it "add[s] uncertainty and complexity to the valuation proceeding without any necessary

improvement in the process," and "diverges from the principle that just compensation must be measured by an objective standard that disregards subjective values which are only of significance to an individual owner." *United States v. 50 Acres of Land* ("*Duncanville*"), 469 U.S. 24, 35 (1984). This Court has correctly recognized as much in this case. Hearing Tr. on Pl.'s Rule 71.1 Mot. ("71.1 Tr."), 20:18-21 (Oct. 6, 2020) ("[D]oesn't Duncanville really say that just compensation through substitute facilities is constitutionally permissible, but only used when fair market value can't be determined?"). So has the Fourth Circuit in this case. *8.929 Acres of Land*, 36 F.4th at 255 ("In line with its purpose, substitute facilities 'cannot, consistently with the Fifth Amendment, be used to deny an owner compensation when a taking has inflicted loss.'") (citation omitted); *id.* (recognizing *Duncanville*'s single, out-of-context sentence on which the United States wholly relies to endorse substitute facilities is "dictum").

No prior case has transformed substitute facilities from a condemnee's shield where fair market value is insufficient compensation, into a condemnor's sword to erase taken property's fair market value. *See, e.g., California*, 395 F.2d at 264 (nothing "supports a rule which would permit the United States to take property having provable value to the State without paying for it"). Likewise here, the United States must pay to take the County's valuable Southgate Parcel.

## C. The United States Lacks Authority to Unilaterally Dispense with the Fair Market Value of the Southgate Parcel.

The "severability" of the Southgate Parcel is at issue due only to the United States' machinations to subsume the Parcel in a single condemnation action with other County property (segments of Columbia Pike and South Joyce Street) for which the parties had agreed that only substitute facilities can provide just compensation. Indeed, the United States could not pursue its global substitute facilities theory if it had entered into an agreement with the County to consummate the parties' shared position on the Columbia Pike parcels, and had brought a takings

action only for the disputed Southgate Parcel.  The United States apparently believes that its litigation tactic to include all the County's property in a single filed action bolsters its position to avoid paying fair market value for taking the Southgate Parcel—which the United States *stipulates* exists.  But the United States' artifice cannot annul the Southgate Parcel's fair market value or render it dependent on simultaneously condemned public rights-of-way.

First, no authority exists for the United States' prior assertion that as condemnor it possesses authority not only to take property but also to declare when it will or will not pay fair market value.  That is the role of courts and juries.  Fed. R. Civ. P. 71.1.  Alternately stated, the United States cannot unilaterally expand the exceedingly rare, if any, circumstances where substitute facilities is appropriate just compensation.  Absent the County's consent, which it never gave here, the United States cannot foist substitute facilities onto the County as sufficient just compensation for taken property.  *See, e.g.*, *10.56 Acres*, 2010 WL 415244, at *2 ("Nothing compelled the parties to concede that the substitute facilities doctrine applies in this case, but they are now bound by their concession.  *One consequence of their choice* is that the market value of the condemned property is no longer relevant.") (emphasis added)).

Second, no rule exists that only one form of compensation is proper for one taking action.  As the Fourth Circuit recognized, payment of fair market value for the severable Southgate Parcel does not result in double or hybrid compensation for the County because "it does not involve mixing compensation methods for *a singular unit of property.*"  *8.929 Acres of Land*, 36 F.4th at 262 (emphasis in original).  The United States' election to bundle the Southgate Parcel with other taken property cannot obscure the former's unique fair market value.  This Court should not create a precedent for condemnors to structure future takings to ensure they generate

no monetary compensation if a roadway or the like runs through one parcel within that taking, regardless of the total taken acreage or relative locations of the simultaneously taken parcels.

Third, the United States' specific taking authority does not allow for substitute facilities or dismissal of fair market value. The United States cited Section 2829A of the NDAA as authority for its taking. *See* NDAA, Pub. L. No. 114-328, § 2829A (2016); Compl. Schedule A, ECF No. 1-3. Yet, the NDAA nowhere authorizes substitute facilities. Rather, it directs the Army to acquire certain County-owned land "by purchase, exchange, donation, or by other means, including condemnation." NDAA, Pub. L. No. 114-328, § 2829A(a)(1). It thus expressly preserves the parties' longstanding land exchange option. *See id.* § (a)(1), (b). Absent such an exchange, the Army "is authorized to expend amounts up to fair market value consideration for the interests in land acquired under this subsection." *Id.* § 2829A(a)(3). Congress further ordered the Army to obtain "appraisals" of the "value of property" acquired. *Id.* § 2829A(c). Thus, the United States had authority to pay just compensation for the value of the Southgate Parcel, which it did not do.

### D. The Project's Purported "Benefits" to the County Are Irrelevant to Just Compensation for the Parcel.

The United States attempts to "offset" the ANC expansion's purported "benefits" to the County against the taken Southgate Parcel's fair market value are baseless legally and factually. The just compensation owed for a taking is a function of the fair market value of the taken property, not of the costs or merits of the condemnor's project underlying the taking. *See, e.g., United States v. Va. Elec. & Power Co.*, 365 U.S. 624, 633 (1961) ("The guiding principle of just compensation is reimbursement to the owner for the property interest taken."). Moreover, the concept of an "offset" for just compensation is inapplicable to the total taking here, as opposed to a partial taking involving a "before" appraisal of the original property and an "after" appraisal of

the remainder property held by the condemnee after the taking.  *See, e.g.,* Yellow Book at 37, 39

(describing "Offsetting of Benefits" under the heading of "Partial Acquisitions").  Here, as

explained above, the United States took *all* of the County's Southgate Parcel and other property

interests in the ANC expansion area.  *See* Compl. Schedule D, ECF No. 1-6; Compl. Schedule E,

ECF No. 1-7; NDAA § 2829A(a)(1)(A).  Thus, any "offset" concept is inapplicable here.

      Even if an offset were legally permissible (which it is not), the United States fails to

substantiate its application of any offset.  For example, the United States nowhere explains its

basis or method for equating project "costs" with County "benefits," or applies such a method

consistently across the properties it took from the County.  Even attempting that exercise is

nonsensical because the United States cannot come up with a fair market value for Columbia

Pike—which is why that taken property is being compensated via substitute facilities.  Therefore,

the United States' assertions of County benefits toward just compensation is both factually

wrong and, more importantly, legally irrelevant.  What matters instead is the County's loss of its

developable Southgate Parcel, and the United States' refusal to pay just compensation for it.

## V.  CONCLUSION

      For the above reasons, the Court should find that the Parcel is severable from the other

portions of the 8.929 total acres that the United States took from the County in this action.

Dated:  April 3, 2023             Respectfully Submitted,

                         */s/ MinhChau N. Corr*
                         MinhChau N. Corr (Bar No. 78877)
                         Arlington County Attorney
                         2100 Clarendon Boulevard, Suite 403
                         Arlington, Virginia 22201
                         Phone:    703-228-3100
                         Fax:       703-228-7106
                         Email:     mcorr@arlingtonva.us

                         John C. Cruden (admitted *pro hac vice*)
                         Gus B. Bauman (admitted *pro hac vice*)

James M. Auslander (admitted *pro hac vice*)
Beveridge & Diamond, P.C.
1900 N Street, N.W.
Washington, DC 20036
Phone:      202-789-6000
Fax:        202-789-6190
Email:      jcruden@bdlaw.com
            gbauman@bdlaw.com
            jauslander@bdlaw.com

Megan L. Morgan (admitted *pro hac vice*)
Beveridge & Diamond, P.C.
201 North Charles Street, Suite 2210
Baltimore, MD 21201
Phone:      410-230-1300
Fax:        410-230-1389
Email:      mmorgan@bdlaw.com

*Attorneys for Defendant*
*Arlington County, Virginia*

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of April, 2023, a true copy of the foregoing was

served via the Court's CM/ECF system on all counsel of record.

Dated: April 3, 2023                    */s/ MinhChau N. Corr*
                                        MinhChau N. Corr